IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EUGENE JACOBB McBRIDE,

               Petitioner,              No. CIV S-10-3387 GGH P[1]

     vs.

MATHEW CATE,                     ORDER &

              Respondent.         FINDINGS AND RECOMMENDATIONS

_____/

I.  Introduction

          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  On June 25, 2008, a jury convicted petitioner of car

jacking, unlawful taking of a vehicle and petty theft with priors.  Petitioner was found to have

two prior serious felony convictions and was sentenced to 35 years to life in prison.

          Petitioner raises three claims in the instant petition: 1) the trial court erred by

admitting his statements at arrest; 2) defense counsel was ineffective for failing to object on

federal grounds regarding the admission of the statements; and 3) erroneous jury instructions.

---

[1] Petitioner consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c); respondent did not respond to the court's inquiry as to whether he would consent or not to the jurisdiction of the magistrate judge.  Thus, this adjudication is performed on Findings and Recommendations, and a district judge will be assigned for review purposes.

1    After carefully considering the record, the court recommends that the petition be

2  denied.

3  II.  Anti-Terrorism and Effective Death Penalty Act (AEDPA)

4    The statutory limitations of federal courts' power to issue habeas corpus relief for

5  persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and

6  Effective Death Penalty Act of 1996 (AEDPA).  The text of § 2254(d) states:

7    An application for a writ of habeas corpus on behalf of a person in
     custody pursuant to the judgment of a State court shall not be
8    granted with respect to any claim that was adjudicated on the
     merits in State court proceedings unless the adjudication of the
9    claim-

10    (1) resulted in a decision that was contrary to, or
      involved an unreasonable application of, clearly
11    established Federal law, as determined by the
      Supreme Court of the United States; or
12

13    (2) resulted in a decision that was based on an
      unreasonable determination of the facts in light of
14    the evidence presented in the State court
      proceeding.
15

16    As a preliminary matter, the Supreme Court has recently held and reconfirmed

17  "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to

18  have been 'adjudicated on the merits.'"  Harrington v. Richter, 131 S.Ct. 770, 785 (2011).

19  Rather, "when a federal claim has been presented to a state court and the state court has denied

20  relief, it may be presumed that the state court adjudicated the claim on the merits in the absence

21  of any indication or state-law procedural principles to the contrary."  Id. at 784-785, citing Harris

22  v. Reed, 489 U.S. 255, 265, 109 S.Ct. 1038 (1989) (presumption of a merits determination when

23  it is unclear whether a decision appearing to rest on federal grounds was decided on another

24  basis).  "The presumption may be overcome when there is reason to think some other explanation

25  for the state court's decision is more likely."  Id. at 785.

26

1    The Supreme Court has set forth the operative standard for federal habeas review

2 of state court decisions under AEDPA as follows:  "For purposes of § 2254(d)(1), 'an

3 *unreasonable* application of federal law is different from an *incorrect* application of federal

4 law.'"  Harrington, supra, 131 S.Ct. at 785, citing Williams v. Taylor, 529 U.S. 362, 410, 120

5 S.Ct. 1495 (2000).  "A state court's determination that a claim lacks merit precludes federal

6 habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

7 decision."  Id. at 786, citing Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140 (2004).

8 Accordingly, "a habeas court must determine what arguments or theories supported or . . could

9 have supported[] the state court's decision; and then it must ask whether it is possible fairminded

10 jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

11 decision of this Court."  Id.  "Evaluating whether a rule application was unreasonable requires

12 considering the rule's specificity.  The more general the rule, the more leeway courts have in

13 reaching outcomes in case-by-case determinations.'"  Id.  Emphasizing the stringency of this

14 standard, which "stops short of imposing a complete bar of federal court relitigation of claims

15 already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a

16 strong case for relief does not mean the state court's contrary conclusion was unreasonable."  Id.,

17 citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166 (2003).

18    The undersigned also finds that the same deference is paid to the factual

19 determinations of state courts.  Under § 2254(d)(2), factual findings of the state courts are

20 presumed to be correct subject only to a review of the record which demonstrates that the factual

21 finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in

22 light of the evidence presented in the state court proceeding."  It makes no sense to interpret

23 "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in

24 § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the

25 same record could not abide by the state court factual determination.  A petitioner must show

26 clearly and convincingly that the factual determination is unreasonable.  See Rice v. Collins, 546

1  U.S. 333, 338, 126 S.Ct. 969, 974 (2006).

2  The habeas corpus petitioner bears the burden of demonstrating the objectively

3  unreasonable nature of the state court decision in light of controlling Supreme Court authority.

4  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).  Specifically, the petitioner "must

5  show that the state court's ruling on the claim being presented in federal court was so lacking in

6  justification that there was an error well understood and comprehended in existing law beyond

7  any possibility for fairminded disagreement."  Harrington, supra, 131 S.Ct. at 786-787.  "Clearly

8  established" law is law that has been "squarely addressed" by the United States Supreme Court.

9  Wright v. Van Patten, 552 U.S. 120, 125, 128 S.Ct. 743, 746 (2008).  Thus, extrapolations of

10 settled law to unique situations will not qualify as clearly established.  See e.g., Carey v.

11 Musladin, 549 U.S. 70, 76, 127 S.Ct. 649, 653-54 (2006) (established law not permitting state

12 sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear

13 prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly

14 established law when spectators' conduct is the alleged cause of bias injection).  The established

15 Supreme Court authority reviewed must be a pronouncement on constitutional principles, or

16 other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on

17 federal courts.  Early v. Packer, 537 U.S. 3, 9, 123 S. Ct. 362, 366 (2002).

18 The state courts need not have cited to federal authority, or even have indicated

19 awareness of federal authority in arriving at their decision.  Early, supra, 537 U.S. at 8, 123 S.Ct.

20 at 365.  Where the state courts have not addressed the constitutional issue in dispute in any

21 reasoned opinion, the federal court will independently review the record in adjudication of that

22 issue.  "Independent review of the record is not de novo review of the constitutional issue, but

23 rather, the only method by which we can determine whether a silent state court decision is

24 objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

25 Finally, if the state courts have not adjudicated the merits of the federal issue, no

26 AEDPA deference is given; the issue is reviewed de novo under general principles of federal law.

4

1    James v. Ryan, __F.3d__, 2012 WL 639292 *18-19 (9th Cir. 2012).

2    III.  Background

3                        The California Court of Appeal set forth the following factual summary that the

4    court adopts below.

5                        Chris Beck lived with his father in a house in Auburn.  He packed up his truck for
                    a move to Truckee and planned on leaving the house early the next morning.
6
7                        Beck waken at 3:30 a.m. as planned but went back to sleep for 20 minutes after
                    hearing the roads were closed due to inclement weather, leaving the keys in the
                    center console and the door of the truck unlocked.  He waken 15 minutes later to
8                    the sound of someone starting his truck and walked out the front door to see
                    [petitioner] in his truck driving past him out of the driveway.
9
10                       Beck gave chase and caught up with the truck.  He jumped on the step bar on the
                    driver's side and held onto the construction rack, yelling at [petitioner] and trying
                    to reach inside the window to grab [petitioner].  Reaching speeds of between 40
11                   and 55 miles per hour, [petitioner] drove erratically and swerved across both lanes
                    of the two-lane road in an effort to dislodge Beck from the truck.  Beck eventually
12                   jumped off and rolled to the ground, suffering minor injuries in the process.  He
                    went back home.
13
14                       At 6:45 a.m., Beck's friend, Jenna, picked him up in her car.  While driving, they
                    came across Beck's abandoned truck resting in a ditch alongside the road and
                    called the authorities.  When police arrived, they found blood inside the cab.  A
15                   number of Beck's personal items were missing from the truck.

16                       Later that morning, Sheriff Deputy Greg McKenzie and other officers arrested
                    [petitioner] at his home.  [Petitioner] had blood on his hands and a bandage on
17                   one of his fingers.  [Petitioner's] wife told McKenzie that [petitioner] cut himself
                    with a knife.  [Petitioner] was handcuffed and detained in the backseat of a patrol
18                   car while deputies searched his home.  They discovered a glass methamphetamine
                    pipe and a metal pipe with marijuana residue on it but did not find any of the
19                   items stolen from Beck's truck.

20                       McKenzie opened the patrol car to advise [petitioner] of his rights and tell him
                    why he was being arrested.  Before McKenzie could say anything, [petitioner]
21                   blurted out, "I can give you the location where meth is being manufactured," and
                    told McKenzie he did not want to go to jail.  McKenzie explained to [petitioner]
22                   that he was under arrest for stealing a truck.  [Petitioner] continued to try to
                    convince McKenzie not to take him to jail, telling him he knew where
23                   methamphetamine was being manufactured.  He pleaded with McKenzie
                    repeatedly during the drive to the jailhouse, saying, "I don't want to go to jail" and
24                   offering to provide him with information.

25   /////

26   /////

5

1        During the booking process at the jail, McKenzie smelled a "strong odor" of
       alcohol on defendant's breath. Tests showed [petitioner's] blood alcohol content
2        was 0.12 to 0.13 percent.

3 People v. McBride, 2009 WL 3634205, *1-2.

4 IV.  Argument & Analysis

5        Claim 1-Admission of Evidence

6        Petitioner argues that the trial court erred by admitting his statements regarding

7 methamphetamine being manufactured.

8        Legal Standard

9        "Habeas relief is available for wrongly admitted evidence only when the

10 questioned evidence renders the trial so fundamentally unfair as to violate federal due process."

11 Jeffries v. Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993).  See also Larson v. Palmateer, 515 F.3d

12 1057, 1065 (9th Cir. 2008) (because federal habeas relief is limited to such instances, "[t]he

13 correctness of the trial court's evidentiary ruling as a matter of state law is irrelevant to our

14 review[.]"); Windham v. Merkle, 163 F.3d 1092, 1103 (9th Cir. 1998).  While adherence to state

15 evidentiary rules suggests that the trial was conducted in a procedurally fair manner, it is

16 certainly possible to have a fair trial even when state standards are violated; conversely, state

17 procedural and evidentiary rules may countenance processes that do not comport with

18 fundamental fairness.  Jammal v. Van de Kamp, 926 F.2d 918, 919 (citing Perry v. Rushen, 713

19 F.2d 1447, 1453 (9th Cir. 1983)).

20        The due process inquiry in federal habeas review is whether the admission of

21 evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  Payne v.

22 Tennessee, 501 U.S. 808, 825, 111 S.Ct. 2597 (1991).  The Supreme Court has admonished that

23 the category of infractions that violate "fundamental fairness" has been defined very narrowly.

24 Estelle v. McGuire, 502 U.S. 62, 72, 112 S.Ct. 475 (1991).  In Holley v. Yarborough, 568 F.3d

25 1091, 1101 (9th Cir. 2009), the Ninth Circuit noted the "Supreme Court has made very few

26 rulings regarding the admission of evidence as a violation of due process.  Although the Court

1  has been clear that a writ should be issued when constitutional errors have rendered the trial

2  fundamentally unfair, see Williams[v. Taylor], 529 U.S. at 375, 120 S.Ct. 1495, it has not yet

3  made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due

4  process violation sufficient to warrant issuance of the writ." Id. at 1101.  Thus, a habeas

5  petitioner "bears a heavy burden in showing a due process violation based on an evidentiary

6  decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir.), amended by 421 F.3d 1154 (9th Cir.

7  2005).

8          Analysis

9          This claim was brought in state court and denied in a reasoned decision by the

10  California Court of Appeal.[2]

> As we have recounted, [petitioner] told Deputy McKenzie he knew where
> methamphetamine was being manufactured and offered to provide information
> about it to avoid going to jail.  [Petitioner] repeated his offer even after he was
> told why he was being arrested and continued to do so while being transported to
> jail.
>
> At trial, over defense objection, the trial court concluded the evidence was
> relevant to show [petitioner's] consciousness of guilt and its probative value
> substantially outweighed the risk of prejudice.  At the same time, the court
> excluded references to "cooking" and "pounds" of methamphetamine as unduly
> prejudicial.
>
> On appeal, [petitioner] contends his statements were not relevant because he was
> not charged with a drug offense, the statements did not reflect a consciousness of
> guilt, they were "bad character evidence," and they were substantially more
> prejudicial than probative.  [Petitioner's] arguments fail.  FN1
>
> FN1.  [Petitioner] raises these claims as encompassing federal constitutional and
> state law error.  Our conclusion that there was no error disposes of both.  (People
> v. Lewis (2009) 46 Cal.4th 1255, 1284 [The routine application of state
> evidentiary law does not implicate a defendant's constitutional rights].)
>
> "Relevant evidence" is "evidence, including evidence relevant to the credibility of
> a witness or hearsay declarant, having any tendency in reason to prove or disprove

[2] The undersigned finds that the Court of Appeal reached the merits of the federal issue as it recognized, as the law set forth above indicates, that federal law does not lie to correct run-of-the-mill evidentiary issues, and the state appellate court "dispose[d] of both [federal and state issues]." See footnote 1 in the state opinion quoted in the text. Thus, de novo review would be inappropriate.

any disputed fact that is of consequence to the determination of the action."
(Evid.Code, § 210; <u>People v. Hill</u> (1992) 3 Cal.App.4th 16, 28-29, overruled on
other grounds in <u>People v. Nesler</u> (1997) 16 Cal.4th 561, 582, fn. 5.)  Here, faced
with the prospect of being returned to jail, [petitioner] offered to make a deal with
McKenzie to avoid going to jail.  He persisted in his attempts to negotiate with
McKenzie even after he was informed of the reason for his arrest, repeating his
offer all the way to the jail.  This evidence bore on [petitioner's] credibility
because a jury could rationally conclude that [petitioner], believing he was guilty,
was trying to get out of the situation by bartering with police by using information
he had about other crimes.

Nevertheless, [petitioner] urges other reasons he may have made the statements,
i.e., he was "fairly intoxicated" when he was arrested, he was newly on parole
following two prior serious felony convictions, he "knew that there was drug
paraphernalia in his trailer," and the drug paraphernalia found in the trailer "may
have been placed on the hood of the patrol car."  It is these circumstances, he
claims, that caused him to repeatedly offer information to McKenzie and tell
McKenzie he did not want to go to jail.  That there could have been other reasons
for [petitioner] to have made the statements goes to their weight, not admissibility.
[Petitioner's] argument based on relevancy fails.

In a different attack on the admissibility of the evidence, [petitioner] contends the
statements were not admissible because they were neither false nor made to
deliberately mislead or deceive McKenzie and did not relate to the charged
crimes.  [Petitioner] misses the point.  Whether the statements were false was
irrelevant.  He cites <u>People v. Kimble</u> (1988) 44 Cal.3d 480 and <u>People v. Fritz</u>
(2007) 153 Cal.App.4th 949, as support for his belief that only "false statements"
"relating to the issue of his guilt or innocence" are admissible to show
consciousness of guilt.  What [petitioner] fails to recognize is that <u>Kimble</u> and
<u>Fritz</u> dealt with only one category of evidence that shows consciousness of guilt,
i.e. false statements that relate to the crime itself.  There are others, i.e., flight after
crime and the scenario we have here (trading information of other crimes for a
get-out-of-jail-free card), that show consciousness of guilt without sharing the
attributes discussed in <u>Kimble</u> and <u>Fritz</u>.  They are nonetheless admissible.  The
fact [petitioner] was trying to cut a deal with the arresting deputy to avoid going to
jail is evidence of his consciousness of guilt, regardless of whether the statements
(that [petitioner] indeed knew where methamphetamine was being manufactured)
were true and whether the statement related to the current crimes.

Finally, we find no abuse of discretion in the admissibility of this evidence.
Although the statements were damaging to the defense, that is not synonymous
with the undue prejudice that necessitates exclusion of evidence.  (<u>People v. Karis</u>
(1988) 46 Cal.3d 612, 638.)  As we noted, the court did exclude portions of
[petitioner's] statements that might tend to inflame, such as the reference to the
large amount of methamphetamine (i.e."pounds") and "cooking" of the drug.
Moreover, there was nothing in [petitioner's] challenged statements suggesting he
was the one involved in drug activity, so [petitioner's] speculation that the
evidence was simply evidence of his bad character is incorrect.  FN2  On this
record, [petitioner's] argument fails.

\\\\\

> FN2.   A reasonable inference from the at-issue statements were that [petitioner] knew simply the location of methamphetamine manufacturing.  This is all his statements included, he was not charged with a drug-related offense, and he was never questioned at trial about whether the drug paraphernalia found in the trailer belonged to him.  It was the [petitioner] who voluntarily admitted ownership of those items on cross-examination.  Had he not done so, the jury might well have concluded the drug paraphernalia belonged to his wife or one of the many guests visiting his home.  Having volunteered that information, however, [petitioner] himself allowed the jury to draw the inference that he may have known more than simply a location for methamphetamine manufacturing, but that was not based on the limited statements offered to prove consciousness of guilt.

People v. McBride, 2009 WL 3634205, *2-3.

Petitioner has failed to show that the admission of this evidence was so fundamentally unfair as to violate federal due process, the necessary requirement for federal habeas relief.  In Estelle v. McGuire, 502 U.S. 62, 72, 112 S.Ct. 475 (1991), the Supreme Court reversed the Ninth Circuit which had found that admission of battered child syndrome was erroneously admitted and fundamentally unfair in violation of due process.  The Supreme Court noted that the admission of the challenged evidence, despite its significance, failed to rise to the level of a due process violation.

In this case, the Court of Appeal noted the potential relevance of the evidence as "consciousness of guilt."  It found that the officer had informed petitioner he was being arrested on account of "stealing a truck," and petitioner continued to bargain with the officer, attempting to use his knowledge of methamphetamine activities, as a reason for the officer not to take petitioner to jail.  The Court of Appeal found the logical nexus between petitioner's statements and consciousness of guilt for the charged offenses (not any methamphetamine offenses).  That petitioner could construct an argument at trial that he thought he was being arrested for controlled substance activities (despite being told otherwise) went only to the weight of the evidence and not its admissibility.  The admission of the evidence here was not unlike the multi-thousands of instances every year where the determination of relevance (ultimately) rests on a resolution by the jury of disputed facts pertaining to the relevance.  See e.g. Fed. R. Ev 104(e). Admission of the "methamphetamine" evidence here was well within notions of fundamental

1   fairness.  Without a doubt, the determination by the Court of Appeal on the lack of the
2   fundamental nature of the evidence question at issue was well within a legitimate interpretation
3   of Estelle.

4          Accordingly, not only was the finding of the appellate court free from AEDPA
5   Estelle (fundamental fairness); there was no error at all.

6                  Claim 2-Ineffective Assistance of Counsel

7          Petitioner next contends that trial counsel was ineffective for failing to object to
8   the admission of his statements on federal grounds, even though trial counsel did vigorously
9   contest the admission of the evidence.

10                  Legal Standard

11         The test for demonstrating ineffective assistance of counsel is set forth in
12   Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).  First, a petitioner must show
13   that, considering all the circumstances, counsel's performance fell below an objective standard of
14   reasonableness.  Strickland, 466 U.S. at 688, 104 S. Ct. at 2065.  To this end, the petitioner must
15   identify the acts or omissions that are alleged not to have been the result of reasonable
16   professional judgment.  Id. at 690, 104 S. Ct. at 2066.  The federal court must then determine
17   whether in light of all the circumstances, the identified acts or omissions were outside the wide
18   range of professional competent assistance.  Id., 104 S. Ct. at 2066.  "We strongly presume that
19   counsel's conduct was within the wide range of reasonable assistance, and that he exercised
20   acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d
21   695, 702 (9th Cir. 1990) (citing Strickland at 466 U.S. at 689, 104 S. Ct. at 2065).

22         Second, a petitioner must affirmatively prove prejudice.  Strickland, 466 U.S. at
23   693, 104 S. Ct. at 2067.  Prejudice is found where "there is a reasonable probability that, but for
24   counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at
25   694, 104 S. Ct. at 2068.  A reasonable probability is "a probability sufficient to undermine
26   confidence in the outcome."  Id., 104 S. Ct. at 2068.

In extraordinary cases, ineffective assistance of counsel claims are evaluated based on a fundamental fairness standard. Williams v. Taylor, 529 U.S. 362, 391-93, 120 S. Ct. 1495, 1512-13 (2000), (citing Lockhart v. Fretwell, 113 S. Ct. 838, 506 U.S. 364 (1993)).

The Supreme Court has recently emphasized the importance of giving deference to trial counsel's decisions, especially in the AEDPA context:

> To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.' [Strickland, supra,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. Id., at 689, 104 S.Ct. 2052. The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.' Id., at 687, 104 S.Ct. 2052.

> With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' Id., at 694, 104 S.Ct. 2052. It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' Id., at 693, 104 S.Ct. 2052. Counsel's errors must be 'so serious'    as to deprive the defendant of a fair trial, a trial whose result is reliable.' Id., at 687, 104 S.Ct. 2052.

> 'Surmounting Strickland's high bar is never an easy task.' Padilla v. Kentucky, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.' Id., at 689, 104 S.Ct. 2052; see also Bell v. Cone, 535

U.S. 685, 702, 122 S.Ct. 1843 (2002); <u>Lockhart v. Fretwell</u>, 506
U.S. 364, 372, 113 S.Ct. 838 (1993).  The question is whether an
attorney's representation amounted to incompetence under
'prevailing professional norms,' not whether it deviated from best
practices or most common custom.  <u>Strickland</u>, 466 U.S., at 690,
104 S.Ct. 2052.

Establishing that a state court's application of <u>Strickland</u> was
unreasonable under § 2254(d) is all the more difficult.  The
standards created by <u>Strickland</u> and § 2254(d) are both "highly
deferential," <u>id.</u>, at 689, 104 S.Ct. 2052; <u>Lindh v. Murphy</u>, 521
U.S. 320, 333, n. 7, 117 S.Ct. 2059 (1997), and when the two apply
in tandem, review is "doubly" so, <u>Knowles</u>, 556 U.S., at ----, 129
S.Ct. at 1420.  The <u>Strickland</u> standard is a general one, so the
range of reasonable applications is substantial. 556 U.S., at ----,
129 S.Ct. at 1420.  Federal habeas courts must guard against the
danger of equating unreasonableness under <u>Strickland</u> with
unreasonableness under § 2254(d).  When § 2254(d) applies, the
question is not whether counsel's actions were reasonable. The
question is whether there is any reasonable argument that counsel
satisfied <u>Strickland</u>'s deferential standard.

<u>Harrington v. Richter</u>, 131 S.Ct. 770, 787-788 (U.S. 2011); <u>see also</u> <u>Premo v. Moore</u>, 131 S.Ct.
733 (U.S. 2011) (discussing AEDPA review of ineffective assistance of counsel claim where
petitioner alleges that counsel was ineffective at the plea bargain stage).

<u>Analysis</u>

This claim was raised on direct appeal before the California Court of Appeal, as
part of claim one above, but was not addressed in the Court of Appeal's opinion.  Superficially,
the issue would then be subject to <i>de novo</i> review.  <u>See</u> discussion of AEDPA <u>supra</u>.  However, it
is well established that if this court decides that admission of evidence was not error on the
"straight" admissibility claim, there can be no ineffective assistance of counsel for not objecting
to the evidence.  <u>See</u> e.g., <u>Miller v. Keeney</u>, 882 F.2d 1428, 1434 99th Cir. 1989); <u>Meza v. Uribe</u>,
2011 WL 7176145 (C.D. Cal. 2011); <u>Dixon v. McDonald</u>, 2011 WL 4433259 (E.D. Cal. 2011);
<u>People v. Szadriewcz</u>, 161 Cal. App. 4th 823, 836, 74 Cal. Rptr. 2d 416 (2008).   Every court
understands this, and the decision of the Court of Appeal on the admissibility claim stands as an

1   implicit rejection on the merits of a the mirror image ineffectiveness claim.[3]  Therefore, the

2   undersigned reviews the ineffectiveness claim with the AEDPA filters firmly in place.

3           In the instant case, petitioner concedes that "defense counsel vigorously contested

4   the admission of the deputy's testimony about petitioner's highly prejudicial statement," but was

5   ineffective for failing to object on the federal constitutional grounds.  Petition at 5.  The

6   undersigned assumes petitioner is setting forth a due process argument.  Out of the presence of

7   the jury, the parties argued before the trial court regarding the admissibility of the statements.

8   Reporter's Transcript (RT) at 198-207.  Petitioner's counsel argued, among other arguments, that

9   the statements were too prejudicial and were inadmissable pursuant to the state evidence code.

10           Counsel objected to the evidence on state law grounds.  That he was (correctly)

11   overruled cannot be ineffective assistance.  As the undersigned has pointed out above, even if

12   viewed as a federal Estelle due process issue, petitioner loses that argument.  It follows that

13   counsel cannot have been ineffective for failing to raise an unmeritorious federal issue.

14    This claim should be denied.

15                     Claim 3-Jury Instruction

16           Petitioner's final claim alleges that the trial court erred by improperly modifying a

17   jury instruction that removed the knowledge requirement regarding petitioner's consciousness of

18   guilt with respect to the admitted statement described in the prior claims.

19                     Legal Standard

20           A challenge to jury instructions does not generally state a federal constitutional

21   claim.  See Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983); see also Middleton v.

22   Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985).  To prevail, petitioner must demonstrate that an

23   erroneous instruction " 'so infected the entire trial that the resulting conviction violates due

24   process.' "  Estelle v. McGuire, 502 U.S. at 72 (quoting Cupp v. Naughten, 414 U.S. 141, 147,

25

26           [3]Indeed, the inadmissibility of the evidence would go both to counsel's reasons for not
     objecting to the evidence and any asserted prejudice occasioned by not objecting.

                                          13

1   94 S.Ct. 396 (1973)).  The standard of review for a federal habeas court "is limited to deciding

2   whether a conviction violated the Constitution, laws, or treaties of the United States (citations

3   omitted)."  Estelle v. McGuire, 502 U.S. at 68.  In order for error in the state trial proceedings to

4   reach the level of a due process violation, the error had to be one involving "fundamental

5   fairness."  Id. at 73.  The Supreme Court has defined the category of infractions that violate

6   fundamental fairness very narrowly.  Id. at 73.

7          Analysis

8          This claim was also denied in a reasoned opinion by the state court that sets forth

9   the jury instruction given by the trial court.

10          The court modified CALCRIM No. 362 which in its unadulterated form deals
            with "consciousness of guilt" to be drawn from defendant's "false statements."
11          FN3  The version given here stated as follows: "If the defendant attempted to
            dissuade the police from arresting him or taking him to jail, that conduct may
12          show he was aware of his guilt of the crime and you may consider it in
            determining his guilt.  [¶] If you conclude that the defendant did attempt to
13          dissuade the police from arresting him or taking him to jail, it is up to you to
            decide its meaning and importance.  However, evidence that the defendant did
14          attempt to dissuade the police in such a manner cannot prove guilt by itself."

15          FN3.  CALCRIM No. 362 provides that if a defendant makes "a false or
            misleading statement before this trial relating to the charged crime, knowing the
16          statement was false or intending to mislead," that conduct may show
            consciousness of guilt and the jury "may consider it in determining [the
17          defendant's] guilt."  The instruction further provides, "If you conclude that the
            defendant made the statement, it is up to you to decide its meaning and
18          importance.  However, evidence that the defendant made such a statement cannot
            prove guilt by itself."

19
            [Petitioner] contends the court incorrectly removed the knowledge requirement
20          and incorrectly told the jury "it is up to you to decide [the statement's] meaning
            and importance."  The court's modification of the instruction was appropriate.  A
21          knowledge requirement was unnecessary because the statement's falsity was
            irrelevant to showing consciousness of guilt.  The point of the statement was,
22          regardless of whether [petitioner] did or did not know where methamphetamine
            was being manufactured, he thought he could avoid jail by claiming he so knew
23          and trading that information with police.  Moreover, it was the jury's job to
            determine what the statement meant and what weight to attach to it.  The jury was
24          neither incorrectly nor inadequately instructed.

25          Having found no error in the instruction or the admission of evidence, we reject
            [petitioner's] claim (inserted in the midst of his evidentiary and instructional
26          arguments) that counsel's performance was deficient based on a lack of adequate

1    objection.

2    People v. McBride, 2009 WL 3634205, *3.

3           Petitioner argues that the trial court erred by removing the "knowing" requirement

4    and by stating it was up to the jury to decide the meaning and importance of the statement.

5    Petitioner's claim is blatantly meritless.  As stated by the state court the role of the jury was to

6    weigh the importance and meaning of the statement.  The knowing requirement, while

7    appropriate for the original wording of CALCRIM No. 362 and false or misleading statements,

8    was meaningless for the facts of the instant case.  The jury instruction involved petitioner's

9    intention in dissuading police from arresting him due to his potential knowledge of other illicit

10   activity.  As stated above, whether petitioner actually knew of methamphetamine manufacturing

11   or was lying was inconsequential to the jury instruction or the facts of the case.  The significance

12   of petitioner's statements was that he was attempting to bargain his way out of being arrested.

13   Thus, the jury instruction was appropriate and moreover petitioner has failed to state a viable

14   federal claim by demonstrating that this one instruction was so erroneous that it violated due

15   process.  This claim should be denied.

16          Accordingly IT IS HEREBY ORDERED that a district judge be assigned to this

17   case.

18          IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

19   habeas corpus be denied.

20          If petitioner files objections, he shall also address if a certificate of appealability

21   should issue and, if so, as to which issues.  A certificate of appealability may issue under 28

22   U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a

23   constitutional right."  28 U.S.C. § 2253(c)(2).  The certificate of appealability must "indicate

24   which specific issue or issues satisfy" the requirement.  28 U.S.C. § 2253(c)(3).

25          These findings and recommendations are submitted to the United States District

26   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time waives the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 7, 2012

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

ggh: ab
mcbr3387.hc

16