IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EUGENE JACOBB McBRIDE,

    Petitioner,

vs.

MATHEW CATE,

    Respondent.

No. CIV S-10-3387 GGH P[1]

ORDER &

FINDINGS AND RECOMMENDATIONS

I. Introduction

    Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. On June 25, 2008, a jury convicted petitioner of car jacking, unlawful taking of a vehicle and petty theft with priors. Petitioner was found to have two prior serious felony convictions and was sentenced to 35 years to life in prison.

    Petitioner raises three claims in the instant petition: 1) the trial court erred by admitting his statements at arrest; 2) defense counsel was ineffective for failing to object on federal grounds regarding the admission of the statements; and 3) erroneous jury instructions.

---

[1] Petitioner consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c); respondent did not respond to the court's inquiry as to whether he would consent or not to the jurisdiction of the magistrate judge. Thus, this adjudication is performed on Findings and Recommendations, and a district judge will be assigned for review purposes.

1

After carefully considering the record, the court recommends that the petition be denied.

II. Anti-Terrorism and Effective Death Penalty Act (AEDPA)

The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As a preliminary matter, the Supreme Court has recently held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington v. Richter, 131 S.Ct. 770, 785 (2011). Rather, "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 784-785, citing Harris v. Reed, 489 U.S. 255, 265, 109 S.Ct. 1038 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The Supreme Court has set forth the operative standard for federal habeas review of state court decisions under AEDPA as follows: "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Harrington, supra, 131 S.Ct. at 785, citing Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786, citing Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140 (2004). Accordingly, "a habeas court must determine what arguments or theories supported or . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" Id. Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id., citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166 (2003).

The undersigned also finds that the same deference is paid to the factual determinations of state courts. Under § 2254(d)(2), factual findings of the state courts are presumed to be correct subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." It makes no sense to interpret "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the same record could not abide by the state court factual determination. A petitioner must show clearly and convincingly that the factual determination is unreasonable. See Rice v. Collins, 546

3

U.S. 333, 338, 126 S.Ct. 969, 974 (2006).

The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002). Specifically, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, supra, 131 S.Ct. at 786-787. "Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court. Wright v. Van Patten, 552 U.S. 120, 125, 128 S.Ct. 743, 746 (2008). Thus, extrapolations of settled law to unique situations will not qualify as clearly established. See e.g., Carey v. Musladin, 549 U.S. 70, 76, 127 S.Ct. 649, 653-54 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection). The established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. 3, 9, 123 S. Ct. 362, 366 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early, supra, 537 U.S. at 8, 123 S.Ct. at 365. Where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

Finally, if the state courts have not adjudicated the merits of the federal issue, no AEDPA deference is given; the issue is reviewed *de novo* under general principles of federal law.

James v. Ryan, __F.3d__, 2012 WL 639292 *18-19 (9th Cir. 2012).

III.  Background

        The California Court of Appeal set forth the following factual summary that the court adopts below.

> Chris Beck lived with his father in a house in Auburn.  He packed up his truck for a move to Truckee and planned on leaving the house early the next morning.
>
> Beck waken at 3:30 a.m. as planned but went back to sleep for 20 minutes after hearing the roads were closed due to inclement weather, leaving the keys in the center console and the door of the truck unlocked.  He waken 15 minutes later to the sound of someone starting his truck and walked out the front door to see [petitioner] in his truck driving past him out of the driveway.
>
> Beck gave chase and caught up with the truck.  He jumped on the step bar on the driver's side and held onto the construction rack, yelling at [petitioner] and trying to reach inside the window to grab [petitioner].  Reaching speeds of between 40 and 55 miles per hour, [petitioner] drove erratically and swerved across both lanes of the two-lane road in an effort to dislodge Beck from the truck.  Beck eventually jumped off and rolled to the ground, suffering minor injuries in the process.  He went back home.
>
> At 6:45 a.m., Beck's friend, Jenna, picked him up in her car.  While driving, they came across Beck's abandoned truck resting in a ditch alongside the road and called the authorities.  When police arrived, they found blood inside the cab.  A number of Beck's personal items were missing from the truck.
>
> Later that morning, Sheriff Deputy Greg McKenzie and other officers arrested [petitioner] at his home. [Petitioner] had blood on his hands and a bandage on one of his fingers. [Petitioner's] wife told McKenzie that [petitioner] cut himself with a knife. [Petitioner] was handcuffed and detained in the backseat of a patrol car while deputies searched his home.  They discovered a glass methamphetamine pipe and a metal pipe with marijuana residue on it but did not find any of the items stolen from Beck's truck.
>
> McKenzie opened the patrol car to advise [petitioner] of his rights and tell him why he was being arrested.  Before McKenzie could say anything, [petitioner] blurted out, "I can give you the location where meth is being manufactured," and told McKenzie he did not want to go to jail.  McKenzie explained to [petitioner] that he was under arrest for stealing a truck. [Petitioner] continued to try to convince McKenzie not to take him to jail, telling him he knew where methamphetamine was being manufactured.  He pleaded with McKenzie repeatedly during the drive to the jailhouse, saying, "I don't want to go to jail" and offering to provide him with information.

/////

/////

> During the booking process at the jail, McKenzie smelled a "strong odor" of alcohol on defendant's breath. Tests showed [petitioner's] blood alcohol content was 0.12 to 0.13 percent.

People v. McBride, 2009 WL 3634205, *1-2.

IV. Argument & Analysis

Claim 1-Admission of Evidence

Petitioner argues that the trial court erred by admitting his statements regarding methamphetamine being manufactured.

Legal Standard

"Habeas relief is available for wrongly admitted evidence only when the questioned evidence renders the trial so fundamentally unfair as to violate federal due process." Jeffries v. Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993). See also Larson v. Palmateer, 515 F.3d 1057, 1065 (9th Cir. 2008) (because federal habeas relief is limited to such instances, "[t]he correctness of the trial court's evidentiary ruling as a matter of state law is irrelevant to our review[.]"); Windham v. Merkle, 163 F.3d 1092, 1103 (9th Cir. 1998). While adherence to state evidentiary rules suggests that the trial was conducted in a procedurally fair manner, it is certainly possible to have a fair trial even when state standards are violated; conversely, state procedural and evidentiary rules may countenance processes that do not comport with fundamental fairness. Jammal v. Van de Kamp, 926 F.2d 918, 919 (citing Perry v. Rushen, 713 F.2d 1447, 1453 (9th Cir. 1983)).

The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. Payne v. Tennessee, 501 U.S. 808, 825, 111 S.Ct. 2597 (1991). The Supreme Court has admonished that the category of infractions that violate "fundamental fairness" has been defined very narrowly. Estelle v. McGuire, 502 U.S. 62, 72, 112 S.Ct. 475 (1991). In Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009), the Ninth Circuit noted the "Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court

6

has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, see Williams[v. Taylor], 529 U.S. at 375, 120 S.Ct. 1495, it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." Id. at 1101.  Thus, a habeas petitioner "bears a heavy burden in showing a due process violation based on an evidentiary decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir.), amended by 421 F.3d 1154 (9th Cir. 2005).

Analysis

This claim was brought in state court and denied in a reasoned decision by the California Court of Appeal.[2]

> As we have recounted, [petitioner] told Deputy McKenzie he knew where methamphetamine was being manufactured and offered to provide information about it to avoid going to jail. [Petitioner] repeated his offer even after he was told why he was being arrested and continued to do so while being transported to jail.
>
> At trial, over defense objection, the trial court concluded the evidence was relevant to show [petitioner's] consciousness of guilt and its probative value substantially outweighed the risk of prejudice.  At the same time, the court excluded references to "cooking" and "pounds" of methamphetamine as unduly prejudicial.
>
> On appeal, [petitioner] contends his statements were not relevant because he was not charged with a drug offense, the statements did not reflect a consciousness of guilt, they were "bad character evidence," and they were substantially more prejudicial than probative. [Petitioner's] arguments fail. FN1
>
> FN1. [Petitioner] raises these claims as encompassing federal constitutional and state law error.  Our conclusion that there was no error disposes of both. (People v. Lewis (2009) 46 Cal.4th 1255, 1284 [The routine application of state evidentiary law does not implicate a defendant's constitutional rights].)
>
> "Relevant evidence" is "evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove

---

[2] The undersigned finds that the Court of Appeal reached the merits of the federal issue as it recognized, as the law set forth above indicates, that federal law does not lie to correct run-of-the-mill evidentiary issues, and the state appellate court "dispose[d] of both [federal and state issues]." See footnote 1 in the state opinion quoted in the text. Thus, *de novo* review would be inappropriate.

any disputed fact that is of consequence to the determination of the action." (Evid.Code, § 210; People v. Hill (1992) 3 Cal.App.4th 16, 28-29, overruled on other grounds in People v. Nesler (1997) 16 Cal.4th 561, 582, fn. 5.)  Here, faced with the prospect of being returned to jail, [petitioner] offered to make a deal with McKenzie to avoid going to jail.  He persisted in his attempts to negotiate with McKenzie even after he was informed of the reason for his arrest, repeating his offer all the way to the jail.  This evidence bore on [petitioner's] credibility because a jury could rationally conclude that [petitioner], believing he was guilty, was trying to get out of the situation by bartering with police by using information he had about other crimes.

Nevertheless, [petitioner] urges other reasons he may have made the statements, i.e., he was "fairly intoxicated" when he was arrested, he was newly on parole following two prior serious felony convictions, he "knew that there was drug paraphernalia in his trailer," and the drug paraphernalia found in the trailer "may have been placed on the hood of the patrol car."  It is these circumstances, he claims, that caused him to repeatedly offer information to McKenzie and tell McKenzie he did not want to go to jail.  That there could have been other reasons for [petitioner] to have made the statements goes to their weight, not admissibility. [Petitioner's] argument based on relevancy fails.

In a different attack on the admissibility of the evidence, [petitioner] contends the statements were not admissible because they were neither false nor made to deliberately mislead or deceive McKenzie and did not relate to the charged crimes.  [Petitioner] misses the point.  Whether the statements were false was irrelevant.  He cites People v. Kimble (1988) 44 Cal.3d 480 and People v. Fritz (2007) 153 Cal.App.4th 949, as support for his belief that only "false statements" "relating to the issue of his guilt or innocence" are admissible to show consciousness of guilt.  What [petitioner] fails to recognize is that Kimble and Fritz dealt with only one category of evidence that shows consciousness of guilt, i.e. false statements that relate to the crime itself.  There are others, i.e., flight after crime and the scenario we have here (trading information of other crimes for a get-out-of-jail-free card), that show consciousness of guilt without sharing the attributes discussed in Kimble and Fritz.  They are nonetheless admissible.  The fact [petitioner] was trying to cut a deal with the arresting deputy to avoid going to jail is evidence of his consciousness of guilt, regardless of whether the statements (that [petitioner] indeed knew where methamphetamine was being manufactured) were true and whether the statement related to the current crimes.

Finally, we find no abuse of discretion in the admissibility of this evidence. Although the statements were damaging to the defense, that is not synonymous with the undue prejudice that necessitates exclusion of evidence.  (People v. Karis (1988) 46 Cal.3d 612, 638.)  As we noted, the court did exclude portions of [petitioner's] statements that might tend to inflame, such as the reference to the large amount of methamphetamine (i.e."pounds") and "cooking" of the drug. Moreover, there was nothing in [petitioner's] challenged statements suggesting he was the one involved in drug activity, so [petitioner's] speculation that the evidence was simply evidence of his bad character is incorrect.  FN2  On this record, [petitioner's] argument fails.

\\\\\

8

> FN2. A reasonable inference from the at-issue statements were that [petitioner] knew simply the location of methamphetamine manufacturing. This is all his statements included, he was not charged with a drug-related offense, and he was never questioned at trial about whether the drug paraphernalia found in the trailer belonged to him. It was the [petitioner] who voluntarily admitted ownership of those items on cross-examination. Had he not done so, the jury might well have concluded the drug paraphernalia belonged to his wife or one of the many guests visiting his home. Having volunteered that information, however, [petitioner] himself allowed the jury to draw the inference that he may have known more than simply a location for methamphetamine manufacturing, but that was not based on the limited statements offered to prove consciousness of guilt.

People v. McBride, 2009 WL 3634205, *2-3.

Petitioner has failed to show that the admission of this evidence was so fundamentally unfair as to violate federal due process, the necessary requirement for federal habeas relief. In Estelle v. McGuire, 502 U.S. 62, 72, 112 S.Ct. 475 (1991), the Supreme Court reversed the Ninth Circuit which had found that admission of battered child syndrome was erroneously admitted and fundamentally unfair in violation of due process. The Supreme Court noted that the admission of the challenged evidence, despite its significance, failed to rise to the level of a due process violation.

In this case, the Court of Appeal noted the potential relevance of the evidence as "consciousness of guilt." It found that the officer had informed petitioner he was being arrested on account of "stealing a truck," and petitioner *continued* to bargain with the officer, attempting to use his knowledge of methamphetamine activities, as a reason for the officer not to take petitioner to jail. The Court of Appeal found the logical nexus between petitioner's statements and consciousness of guilt for the charged offenses (not any methamphetamine offenses). That petitioner could construct an argument at trial that he thought he was being arrested for controlled substance activities (despite being told otherwise) went only to the weight of the evidence and not its admissibility. The admission of the evidence here was not unlike the multi-thousands of instances every year where the determination of relevance (ultimately) rests on a resolution by the jury of disputed facts pertaining to the relevance. See e.g. Fed. R. Ev 104(e). Admission of the "methamphetamine" evidence here was well within notions of fundamental

fairness. Without a doubt, the determination by the Court of Appeal on the lack of the fundamental nature of the evidence question at issue was well within a legitimate interpretation of Estelle.

Accordingly, not only was the finding of the appellate court free from AEDPA Estelle (fundamental fairness); there was no error at all.

### Claim 2-Ineffective Assistance of Counsel

Petitioner next contends that trial counsel was ineffective for failing to object to the admission of his statements on federal grounds, even though trial counsel did vigorously contest the admission of the evidence.

### Legal Standard

The test for demonstrating ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688, 104 S. Ct. at 2065. To this end, the petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. Id. at 690, 104 S. Ct. at 2066. The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id., 104 S. Ct. at 2066. "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland at 466 U.S. at 689, 104 S. Ct. at 2065).

Second, a petitioner must affirmatively prove prejudice. Strickland, 466 U.S. at 693, 104 S. Ct. at 2067. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id., 104 S. Ct. at 2068.

In extraordinary cases, ineffective assistance of counsel claims are evaluated based on a fundamental fairness standard. Williams v. Taylor, 529 U.S. 362, 391-93, 120 S. Ct. 1495, 1512-13 (2000), (citing Lockhart v. Fretwell, 113 S. Ct. 838, 506 U.S. 364 (1993)).

The Supreme Court has recently emphasized the importance of giving deference to trial counsel's decisions, especially in the AEDPA context:

> To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.' [Strickland, supra,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. Id., at 689, 104 S.Ct. 2052. The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.' Id., at 687, 104 S.Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' Id., at 694, 104 S.Ct. 2052. It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' Id., at 693, 104 S.Ct. 2052. Counsel's errors must be 'so serious' as to deprive the defendant of a fair trial, a trial whose result is reliable.' Id., at 687, 104 S.Ct. 2052.
>
> 'Surmounting Strickland's high bar is never an easy task.' Padilla v. Kentucky, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.' Id., at 689, 104 S.Ct. 2052; see also Bell v. Cone, 535

> U.S. 685, 702, 122 S.Ct. 1843 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838 (1993). The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom. Strickland, 466 U.S., at 690, 104 S.Ct. 2052.
>
> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," id., at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059 (1997), and when the two apply in tandem, review is "doubly" so, Knowles, 556 U.S., at ----, 129 S.Ct. at 1420. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington v. Richter, 131 S.Ct. 770, 787-788 (U.S. 2011); see also Premo v. Moore, 131 S.Ct. 733 (U.S. 2011) (discussing AEDPA review of ineffective assistance of counsel claim where petitioner alleges that counsel was ineffective at the plea bargain stage).

### Analysis

This claim was raised on direct appeal before the California Court of Appeal, as part of claim one above, but was not addressed in the Court of Appeal's opinion. Superficially, the issue would then be subject to *de novo* review. See discussion of AEDPA supra. However, it is well established that if this court decides that admission of evidence was not error on the "straight" admissibility claim, there can be no ineffective assistance of counsel for not objecting to the evidence. See e.g., Miller v. Keeney, 882 F.2d 1428, 1434 99th Cir. 1989); Meza v. Uribe, 2011 WL 7176145 (C.D. Cal. 2011); Dixon v. McDonald, 2011 WL 4433259 (E.D. Cal. 2011); People v. Szadriewcz, 161 Cal. App. 4th 823, 836, 74 Cal. Rptr. 2d 416 (2008). Every court understands this, and the decision of the Court of Appeal on the admissibility claim stands as an

implicit rejection on the merits of a the mirror image ineffectiveness claim.[3]  Therefore, the undersigned reviews the ineffectiveness claim with the AEDPA filters firmly in place.

In the instant case, petitioner concedes that "defense counsel vigorously contested the admission of the deputy's testimony about petitioner's highly prejudicial statement," but was ineffective for failing to object on the federal constitutional grounds.  Petition at 5.  The undersigned assumes petitioner is setting forth a due process argument.  Out of the presence of the jury, the parties argued before the trial court regarding the admissibility of the statements.  Reporter's Transcript (RT) at 198-207.  Petitioner's counsel argued, among other arguments, that the statements were too prejudicial and were inadmissable pursuant to the state evidence code.

Counsel objected to the evidence on state law grounds.  That he was (correctly) overruled cannot be ineffective assistance.  As the undersigned has pointed out above, even if viewed as a federal Estelle due process issue, petitioner loses that argument.  It follows that counsel cannot have been ineffective for failing to raise an unmeritorious federal issue.  This claim should be denied.

Claim 3-Jury Instruction

Petitioner's final claim alleges that the trial court erred by improperly modifying a jury instruction that removed the knowledge requirement regarding petitioner's consciousness of guilt with respect to the admitted statement described in the prior claims.

Legal Standard

A challenge to jury instructions does not generally state a federal constitutional claim.  See Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983); see also Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985).  To prevail, petitioner must demonstrate that an erroneous instruction " 'so infected the entire trial that the resulting conviction violates due process.' "  Estelle v. McGuire, 502 U.S. at 72 (quoting Cupp v. Naughten, 414 U.S. 141, 147,

---

[3]Indeed, the inadmissibility of the evidence would go both to counsel's reasons for not objecting to the evidence and any asserted prejudice occasioned by not objecting.

94 S.Ct. 396 (1973)).  The standard of review for a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States (citations omitted)."  Estelle v. McGuire, 502 U.S. at 68.  In order for error in the state trial proceedings to reach the level of a due process violation, the error had to be one involving "fundamental fairness."  Id. at 73.  The Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly.  Id. at 73.

Analysis

This claim was also denied in a reasoned opinion by the state court that sets forth the jury instruction given by the trial court.

> The court modified CALCRIM No. 362 which in its unadulterated form deals with "consciousness of guilt" to be drawn from defendant's "false statements." FN3  The version given here stated as follows: "If the defendant attempted to dissuade the police from arresting him or taking him to jail, that conduct may show he was aware of his guilt of the crime and you may consider it in determining his guilt.  [¶] If you conclude that the defendant did attempt to dissuade the police from arresting him or taking him to jail, it is up to you to decide its meaning and importance.  However, evidence that the defendant did attempt to dissuade the police in such a manner cannot prove guilt by itself."
>
> FN3.  CALCRIM No. 362 provides that if a defendant makes "a false or misleading statement before this trial relating to the charged crime, knowing the statement was false or intending to mislead," that conduct may show consciousness of guilt and the jury "may consider it in determining [the defendant's] guilt."  The instruction further provides, "If you conclude that the defendant made the statement, it is up to you to decide its meaning and importance.  However, evidence that the defendant made such a statement cannot prove guilt by itself."
>
> [Petitioner] contends the court incorrectly removed the knowledge requirement and incorrectly told the jury "it is up to you to decide [the statement's] meaning and importance."  The court's modification of the instruction was appropriate.  A knowledge requirement was unnecessary because the statement's falsity was irrelevant to showing consciousness of guilt.  The point of the statement was, regardless of whether [petitioner] did or did not know where methamphetamine was being manufactured, he thought he could avoid jail by claiming he so knew and trading that information with police.  Moreover, it was the jury's job to determine what the statement meant and what weight to attach to it.  The jury was neither incorrectly nor inadequately instructed.
>
> Having found no error in the instruction or the admission of evidence, we reject [petitioner's] claim (inserted in the midst of his evidentiary and instructional arguments) that counsel's performance was deficient based on a lack of adequate

14

1 objection.

2 People v. McBride, 2009 WL 3634205, *3.

3       Petitioner argues that the trial court erred by removing the "knowing" requirement
4 and by stating it was up to the jury to decide the meaning and importance of the statement.
5 Petitioner's claim is blatantly meritless.  As stated by the state court the role of the jury was to
6 weigh the importance and meaning of the statement.  The knowing requirement, while
7 appropriate for the original wording of CALCRIM No. 362 and false or misleading statements,
8 was meaningless for the facts of the instant case.  The jury instruction involved petitioner's
9 intention in dissuading police from arresting him due to his potential knowledge of other illicit
10 activity.  As stated above, whether petitioner actually knew of methamphetamine manufacturing
11 or was lying was inconsequential to the jury instruction or the facts of the case.  The significance
12 of petitioner's statements was that he was attempting to bargain his way out of being arrested.
13 Thus, the jury instruction was appropriate and moreover petitioner has failed to state a viable
14 federal claim by demonstrating that this one instruction was so erroneous that it violated due
15 process.  This claim should be denied.

16       Accordingly IT IS HEREBY ORDERED that a district judge be assigned to this
17 case.

18       IT IS HEREBY RECOMMENDED that petitioner's application for a writ of
19 habeas corpus be denied.

20       If petitioner files objections, he shall also address if a certificate of appealability
21 should issue and, if so, as to which issues.  A certificate of appealability may issue under 28
22 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a
23 constitutional right." 28 U.S.C. § 2253(c)(2).  The certificate of appealability must "indicate
24 which specific issue or issues satisfy" the requirement.  28 U.S.C. § 2253(c)(3).

25       These findings and recommendations are submitted to the United States District
26 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

15

days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time waives the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 7, 2012

         /s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

ggh: ab
mcbr3387.hc